Warner, J.
(orally).
This is one of the most unfortunate oases that I have ever heard. The wife comes into court and asks for a divorce from the husband on the grounds of extreme cruelty and gross neglect of duty. She is evidently a woman of intelligence and respectability. The husband himself appears, and, not asking for any divorce himself, contends that he has done nothing that will justify his wife making an application for divorce. He also is a gentleman of good reputation and standing in this community. Here are two parties who have lived together for some twenty-five years, and who have had their ups and downs during the married life. While unfortunate in having an afflicted child, they lived together all these years. But they have now separated from each other and executed articles of separation which cover property interests and appear to be unable to live longer together its husband and wife.
*602 The mere fact that they are not able to live together as husband and wife is no cause for a divorce to either.
The mere fact of incompatibility of temper, unless its existence and results amount to extreme cruelty, is not a cause for divorce.
In her testimony the wife states that the husband has not been a companion to her during-all their married life. Just exactly the meaning of this upon the evidence might seem doubtful.
But I think I can understand the situation when I take into consideration all the evidence that was adduced in this case. I have no doubt but that the relationship of these parties up to the time that this disagreement occurred were of the ordinary harmony that exist between husband and wife. So the court is brought to face this one question: as to whether the treatment of this wife by the husband in the matter of her religious belief has been such treatment as in law amounts either to gross neglect of duty or extreme cruelty.
It is apparent, I think, that under certain circumstances there might be treatment on the part of the husband toward the wife with reference to religious beliefs that would amount to extreme cruelty. It is extremely unfortunate for these parties that any such controversy with reference to religious belief should have arisen. But the question arises in that regard, what is the duty of each to the other under such circumstances? Under the marriage contract each owes to the other proper consideration under circumstances that arise during that relationship. It is not a one-sided affair. It is equally incumbent upon the wife to respect the husband as it is for the husband to respect the wife in matters of opinion. Probably there is no belief that stirs men’s feelings so deeply as religious belief. So men and women have been burned at the stake. because they would not recant their religious belief. They have been willing to forfeit life rather than their religious convictions. This clearly shows the strength of religious belief. Now this wife is a woman of strong character. She is a woman of strong convictions, and undoubtedly believes with her whole heart and soul that the Christian Science religion is absolutely right in all respects, and she undoubtedly has the utmost confidence in it. But, even having this sincere *603 belief, it is her duty to respect the belief, whatever it may be, of the husband. The husband on the other hand seems to be a man without any settled religious belief, which is his right. He also is a man of strong mentality, and of determined character. It is most unfortunate that a difference of this kind should have arisen between these two people with such strong personal characteristics — with this religious question as a bone of contention between them as husband and wife.
Now I am clearly of the opinion that under such circumstances these parties should have refrained mutually from any discussion of these matters upon which they were so far apart in their opinions. I think it was the duty of the husband to refrain from all criticism of the belief of his wife, and it was clearly the duty of the wife to refrain from giving her husband any just cause to complain of her conduct in the management of the household or otherwise. Now under these circumstances a third element has crept in — the unfortunate boy.
Undoubtedly they both desire his best welfare. There can be no question of that. Undoubtedly the wife would do everything in her power for the boy’s good as she understands it. And undoubtedly the father would do the same. But they disagree entirely as to what is best for the boy. The father, like a good father, yielded to the mother’s importunities and allowed this boy to be treated under the method of Christian Science for a period of time, and then finding no good results seemed to come from the treatment, he very naturally objected to the further continuance of that treatment. The mother on the other hand desired to continue this treatment. The boy, however, was finally sent to the hospital at G-allipolis, Ohio, for epileptics. How and under what circumstances -does not appear from the evidence. But he is there. Undoubtedly the treatment of this boy was a bone of contention between them, and I do not see how that contention could have been avoided. And so I have no doubt but that there was discord, and, possibly, at times harsh words and probably severe criticisms by the father of the Christian Science Church. I place no particular stress upon the evidence that was gone into as to the visits of this wife to these different places at *604 tending meetings of her church, visiting friends and the small amounts of money she expended.
The further fact that she, herself, treats people under the methods of Christian Science has little or no bearing on the merits of this case. In a nut shell, the question is whether or not having these convictions which I have described, this father has been guilty of extreme cruelty or gross neglect of duty by his treatment of his wife during the latter part of their association together. I have no idea that there has been any personal violence. And so I come to the question of whether or not the evidence ,and the situation of the parties is such, that I can justly and fairly hold this husband has been guilty as suggested. I have no doubt about the strained relations of the husband and wife, but strained relations are not a cause for divorce. I am also confronted with the situation that in all probability these parties will never live together again, and that if this marriage relation continues it is merely a form of law and not a union of hearts. But this is not a cause for divorce. I have no doubt but that the attitude of this defendant towards his wife was, under this circumstance of religious difference, exceedingly disagreeable to her, but on the other hand her attitude with reference to her religious belief was also exceedingly disagreeable to him. It is a most unfortunate situation, but as I construe the statutes of Ohio I can not see my way clear to grant this plaintiff a divorce although I would be glad to do so if a legal ground could be shown. As far as the custody of the child is concerned, the court under our statutes, the parties being separted, has the power to determine which party should be given control. Under the peculiar circumstances of this case, the boy being at this time twenty years of age and now at the G-allipolis Hospital, I pball give t^ie custody of the boy to the father.
A decree may be drawn accordingly.